UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

OLIVIA LYNNETTE B.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 3:22-CV-5155-DWC

ORDER AFFRIMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of Plaintiff's applications for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before United States Magistrate Judge Christel.

## BACKGROUND

Plaintiff filed for disability insurance benefits and supplemental security income on January 10, 2019, alleging a disability onset date of November 1, 2017 due to "three bulging discs, anxiety, and an inability to go outside without freaking out." Administrative Record (AR)

26, 90, 208-222. Her date last insured for social security disability purposes was December 31, 2018. AR 230.

Plaintiff's applications were denied at the initial determination and reconsideration stages. AR 118-124, 126-131. She requested a hearing before an administrative law judge (ALJ), which was conducted online July 27, 2021, wherein Plaintiff appeared, unrepresented. AR 36-60. The ALJ issued a decision on November 15, 2021, denying Plaintiff's claim. AR 12-35. Plaintiff appealed the decision to the Appeals Council on November 30, 2021, which denied review on January 18, 2022, making the Commissioner's decision final. AR 1-6, 205-207, 318-321; 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

# THE ALJ's FINDINGS

The ALJ found Plaintiff to suffer from the severe impairments of a lumbar spine condition, affective disorder, anxiety disorder, and posttraumatic stress disorder. AR 22.

The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform

> …light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She must avoid concentrated exposure to extreme cold, vibration, and work hazards, such as moving machinery and unprotected heights. She can perform simple, routine tasks. She can perform work involving occasional changes in the work routine and setting and with occasional contact with the general public, coworkers, and supervisors.

AR 21-22.

The ALJ made a step four finding that Plaintiff remained capable of performing her past relevant work as a newspaper carrier, as was therefore not disabled. AR 33. In addition, the ALJ made an alternative step five finding that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy such as "silver wrapper", "power screwdriver operator", and "cleaner, housekeeping". AR 33-34.

# DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting some of the limitations assessed by John F. Robinson, PhD, and Shawn Horn, PsyD, and by rejecting the plaintiff's testimony. Dkt. 8. The Commissioner disagrees. *See generally* Dkt. 9. For the reasons that follow the Court concurs with the Commissioner.

I. Plaintiff's Credibility

Plaintiff argues the ALJ improperly rejected her testimony.

///

///

A. <u>Credibility Regulations</u>

"The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted). "If the claimant meets this threshold and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

When assessing a claimant's credibility the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

However, affirmative evidence of symptom magnification, or malingering, relieves an ALJ from the burden of providing specific, clear, and convincing reasons for discounting a claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may

not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Id*. at 579.

B. Analysis

The ALJ found Plaintiff's subjective reporting about the severity of her symptoms was not fully credible. Among his credibility-related findings were the following:

> She goes outside only when required. She commutes by riding with others. She stated **she does not drive** because she does not have a driver's license and cannot go out alone because it scares her. (Exhibit 6E/2). However, in March 2020 the claimant stated she was **incarcerated for a traffic ticket**, suggesting that she does drive. (Exhibit 11F/6).

AR 21 (emphasis added).

> She was on Zoloft, but when the pandemic started, she was arrested for a misunderstanding and was put on Zoloft for a short time, but was not given a prescription for it. **She does not currently take this medication, but is trying to get counseling.**

AR 22-23 (emphasis added).

> The record contains no objective findings to explain her alleged loss of function as of the alleged onset date. In May 2018, the claimant presented to an emergency department with a chief complaint of back pain that radiates to the bilateral legs. The claimant explained that her chronic back pain is well controlled with physical therapy, but pain increased after **lifting furniture three days previously**. (Exhibit 3F/9). This evidence shows her **pain is well controlled** with physical therapy, but can increase **when she overdoes it.**
>
> The claimant presented to an emergency department in July 2018 complaining of abdominal pain over the past three days. (Exhibit 3F/22). The attending doctor observed severe anxiety, psychomotor agitation, and bruxism. **She was moving her hands continuously and picking at her clothes.** (Exhibit 3F/19). Urine drug screen was **positive for methamphetamine and tetrahydrocannabinol (THC)**. The doctor thought psychomotor agitation was consistent with methamphetamine intoxication and that might be playing a role in her current presentation. He assessed epigastric abdominal pain, nausea, anxiety, and **methamphetamine abuse**. (Exhibit 3F/23).

AR 24 (emphasis added).

> The claimant has stated that **she cannot function if she does not smoke marijuana**. In an odd statement, she told her provider that **she cannot stop using marijuana because she needs pain medication for her back**. She lost custody of her children when her brother stabbed her and **she ran away, leaving her children with her mother.** (Exhibit 4F/25).

AR 24 (emphasis added). After noting that the "record contains little recent evidence," the ALJ further stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they differ from the evidence of record. **For example**, in her function report, the **claimant stated she can walk about 0.25 miles** before needing to rest for 10 to 15 minutes. However, in May 2019, the claimant **was carrying 50 pounds of materials with her all day for a three-hour walk.** (Exhibit 6F/9). Such capability is at odds with the claimant's allegations. It suggests she is capable of greater than sedentary work. Furthermore, the claimant has reported anxiety being around people in public places, such as on a bus. However, in June 2019, **she reported wanting to catch a bus to a neighboring town.** (Exhibit 7F/22). This statement suggests she is capable being around people in public places despite anxiety.
>
> The claimant alleges her conditions affect her ability to use her hands. (Exhibit 6E/6). Objective findings do not support this allegation. For example, her grip is intact. (Exhibit 14F/27). Her provider opined she has no significant limitation in the ability to use her hands. (Exhibit 14F/2). **The medical record does not provide objective evidence of difficulty using her hands.** Accordingly, this allegation is not consistent with the objective findings.

AR 25 (emphasis added).

> Objective findings **do not support inability to sustain fulltime work activity**. Rather, they suggest the claimant has physical and mental health conditions that render her unsuitable for certain jobs. The undersigned has also considered the claimant's testimony and its relation to the medical evidence. **Because her allegations are not fully supported by the evidence of record, the undersigned considers the claimant's testimony with caution.** The residual functional capacity considers the claimant's physical and mental health conditions. It provides appropriate workplace restrictions to enable return to basic work activity.

AR 28 (emphasis added).

Plaintiff selectively identifies portions of the above findings to argue the ALJ rejected her testimony based upon only some of these reasons. *See e.g., White v. Comm'r Soc. Sec.*, 572 F.3d

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 6

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 6

272, 285 (6th Cir. 2009) ("The problem with [plaintiff's] cherry picking argument, however is that it cuts both ways. She too cherry picks data."). Plaintiff contends the ALJ "ignore[d]" the statement in the treating note that walking for three hours while carrying 50 pounds in May 2019 caused her great difficulty" (AR 489). Dkt. 8 at 6-7. In fact, the ALJ noted that in general Plaintiff's pain is well controlled with physical therapy, but can increase "when she overdoes it" as evidenced by another example the ALJ cited (that Plaintiff overlooks), from May 2018, when Plaintiff went to the emergency room after "lifting furniture three days previously." AR 24.

Plaintiff also claims the ALJ misinterpreted the statement in a June 2019 note that she wanted to catch a bus to a neighboring town (AR 25, 525) to mean her social anxiety is not as severe as she claims, because she also testified that some days she cannot go out in public (AR 48, 52) and that one of the reasons she "gave up her children" was concern over what she would do when she needed groceries but could not go outside (AR 49). Dkt. 8 at 6-7. In so arguing, Plaintiff fails to observe that the ALJ cited this as one "example" of evidence suggesting Plaintiff was capable of being around people and in public places despite anxiety (AR 25), but also pointed out other inconsistencies in Plaintiff's testimony.

Such inconsistencies included that contrary to Plaintiff's claim she put her children up for adoption because of her inability to grocery shop the evidence indicated the authorities removed Plaintiff's children from her custody in November 2017 against her will due to violence in the home (AR 24), that Plaintiff testified she does not drive despite evidence that she was incarcerated in March 2020 "for a traffic ticket" suggesting she does drive (AR 21), that she often indicated she did not use drugs but also admitted she has been addicted to marijuana since the age of 13 (AR 23) and she was diagnosed with methamphetamine abuse in July 2018 (AR 23).

Plaintiff's other allegation regarding the ALJ's credibility determination is that he misinterpreted the medical evidence regarding her ability to use her hands. Dkt. 8 at 6-7. The ALJ found no objective evidence of limitations in her ability to use her hands, but Plaintiff claims her "provider did indeed opine [that Plaintiff's] ulnar neuropathy limited her in carrying, handling, pushing, pulling, and reaching; and her left fifth and fourth fingers were numb ([AR] 586)." *Id*.; AR 25. Yet, as the Commissioner notes, the record Plaintiff cites actually supports the ALJ's finding. Dkt. 9 at 4-5. The Physical Functional Report prepared by Stephen Meharg, Ph.D. at the request of the Department of Children and Family Services in June 2018 indicates that Plaintiff's "Ulnar Neuropathy" was a "2" or "Mild" in severity, defined therein as "No significant interference with the ability to perform one or more basic work-related activities." AR 586. Accordingly, the Court finds no merit to Plaintiff's assertions.

In sum, the Court finds the ALJ reasonably discounted Plaintiff's claims of disabling social anxiety and hand impairment because they were incongruous with objective medical evidence and at odds with her own reports. There are specific, clear, and convincing reasons to discount Plaintiff's testimony. *See e.g.*, *Smolen*, 80 F.3d at 1284; *Regennitter*, 166 F.3d at 1297.

II.     Medical Evidence and the RFC

Plaintiff claims the ALJ did not adequately account for some of the functional limitations assessed by state agency reviewers John F. Robinson, Ph.D (Robinson) and Shawn Horn, Psy.D. (Horn).

A.     Medical Evidence Regulations

The regulations regarding evaluation of medical evidence were amended for claims protectively filed on or after March 27, 2017, such as this one. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). In the new regulations, the Commissioner rescinded Social Security Regulation

(SSR) 06-03p and broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. The Commissioner also clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

Additionally, the new regulations state the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a), (b)(2); 416.920c(a), (b)(2).

Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion[1], the ALJ must still "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a), (b)(1); 416.920c(a), (b)(1). The ALJ is specifically

---

[1] The Ninth Circuit recently held that "[t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32 F. 4th 785, 787 (9th Cir. 2022), *petition for rehearing pending*. As a result, the Ninth Circuit concluded that the revised regulations displaced the longstanding case law requiring an ALJ to provide "specific and legitimate" reasons for rejecting a contracted physician's opinion or "clear and convincing" reasons for discrediting an uncontradicted physician's opinion. *Id.*

required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. § 416.920c(c)(1). Inversely, consistency involves a consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. § 416.920c(c)(2).

B. Analysis

Robinson reviewed Plaintiff's medical record in April 2019 and completed a mental residual functional capacity assessment wherein he opined that Plaintiff can work in the proximity of coworkers—though not collaboratively—and can accept instructions from supervisors but cannot work in jobs requiring more than occasional, superficial interaction with the public. AR 70-72. Robinson further opined that due to low stress tolerance Plaintiff would benefit from a predictable work environment, as she was able to adapt to occasional changes in a work setting. AR 72, 85. Finally, he stated that Plaintiff should avoid common workplace hazards. *Id*.

In September 2019 Horn reviewed Plaintiff's medical record and concurred with Robinson's assessment. AR 100-101, 114-115.

The ALJ stated that he found Robinson's (and by extension, Horn's) opinions persuasive and consistent with the record as a whole. AR 26. Yet, according to Plaintiff, the ALJ failed to include all of the limitations assessed by Robinson (and cosigned by Horn) in his RFC finding. Dkt. 9 at 3-5. In particular, Plaintiff argues the ALJ did not accommodate their findings that Plaintiff could not work collaboratively and was limited to superficial interaction with the public. Dkt. 8 at 4.

1     The Commissioner insists that the ALJ properly translated Robinson's functional assessment into vocational limitations. Dkt. 9 at 2-3 (*citing Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017).

    The Court has reviewed Robinson's assessment, and concurs with the Commissioner. The ALJ included Robinson's limitation of no collaborative work and only "superficial" interaction with the public by including the limitation of "occasional contact with the general public, coworkers, and supervisors" in her RFC. AR 21-22. While the ALJ did not expressly employ the words "collaborative" or "superficial" in his RFC finding, this Court concurs with the Commissioner that the ALJ reasonably interpreted Robinson's (and Horn's) opined limitations. Dkt. 9 at 2-3; *Shaibi*, 883 F.3d at 1108 (finding the ALJ's interpretation of the available evidence, including the words "moderate" and "substantial" was rational and supported by substantial evidence). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## CONCLUSION

    In conclusion, this Court finds the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Commissioner's final decision is affirmed.

Dated this 30th day of August, 2022.

*[signature]*

David W. Christel
United States Magistrate Judge